UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| QRI MONTAGUE, ) | |
| ) | |
| ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: |
| ) | |
| ) | |
| ) | |
| LEMUEL OMANI GARDNER ) | **JURY TRIAL DEMANDED** |
| Individually and in his official capacity ) | |
| as a City of Atlanta Police Officer, ) | |
| ) | |
| ) | |
| ) | |
| Defendant. | |

## COMPLAINT

COMES NOW, Plaintiff Qri Montague ("Plaintiff") and brings this action against Defendant Gardner by showing this Honorable Court the following:

## PARTIES

1.

Plaintiff Qri Montague ("Plaintiff") is a United States citizen over the age of eighteen. She lived in Georgia at all times relevant to the complaint.

2.

Defendant Lemuel Omani Gardner, upon information and belief, is a resident of Cobb County, Georgia and is subject to the personal jurisdiction of this Court.

Defendant Gardner may be personally served with Summons and a copy of the Complaint at his residence address.

3.

At all times relevant to this action, Defendant Gardner was acting under color of state law and within the scope of his discretionary functions as a duly sworn, certified law enforcement officer employed in the Atlanta Police Department (hereinafter "APD") by the City of Atlanta.

## JURISDICTION AND VENUE

4.

This action arises under the authority vested in this Court by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

5.

This Court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. 1367.

6.

Upon service of process, this Court acquires personal jurisdiction of Defendant under Fed. R. Civ. P. 4(k)(1)(a).

7.

Venue is proper in the Atlanta Division of the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this District and Defendant resides within this District.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

8.

On October 7, 2018 at approximately 10:48 p.m., Defendant Gardner was operating his City of Atlanta patrol car on Interstate 20 westbound.

9.

Defendant Gardner phoned into dispatch that he had observed a motorist commit a moving traffic violation.

10.

After the motorist exited from Interstate 20 at Exit 54, Defendant Gardner stopped the vehicle the motorist was operating without incident.

11.

More specifically, the motorist stopped the vehicle near 270 Langhorn Street, S.W., in Atlanta, Fulton County, Georgia.

12.

Defendant Gardner stopped behind the stopped vehicle and ordered the driver to exit.

13.

The driver complied with Defendant Gardner's command.

14.

The driver exited the vehicle with her hands raised in the air and clearly visible to Defendant Gardner.

15.

Defendant Gardner immediately placed the female motorist in handcuffs.

16.

The motorist inquired of Defendant Gardner why she was being handcuffed.

17.

Defendant Gardner did not respond, directing the motorist to provide her driver's license.

18.

Defendant Gardner retrieved the motorist's driver's license from her fanny pack that was draped over one of her shoulders.

19.

Once he retrieved her driver's license Defendant Gardner directed the motorist to sit on a dirt strewn sidewalk.

20.

Declining to sit in the dirt, wanting to be visible to other drivers, and uncertain why she had been handcuffed in the first place the motorist instead sat on the rear of her own vehicle.

21.

Defendant Gardner then went back to his patrol car to check on the motorist's license and vehicle registration.

22.

At some point Defendant Gardner directed the motorist to sit in the back seat of his patrol car.

23.

Apparently dissatisfied with the pace at which the motorist was entering the back seat of his patrol car Defendant Gardner removed his Taser and pointed it at the motorist.

24.

Defendant Gardner then deployed his Taser on the motorist, striking her in the left upper thigh.

25.

When the motorist complained of being tased, Defendant Gardner responded: "Well, you're lucky I didn't do more to you."

26.

Defendant Gardner then issued traffic citations to the motorist, requiring the motorist to sign for the citations.

27.

Defendant Gardner charged the motorist with four traffic-related violations: a) failure to signal; b) improper lane change; c) driving too fast for conditions; and d) reckless driving.

28.

Then, Defendant Gardner announced to the motorist that she was lucky, as he was going to allow her to leave, implying that she would not be taken to jail.

29.

The motorist inquired of the police officer what his name was.

30.

The officer then gave the motorist his name – Officer L. Gardner.

31.

The motorist whom Defendant Gardner stopped, handcuffed, and tased was the Plaintiff in this action – Qri Montague.

**The Formal Complaint**

32.

On October 15, 2018, Ms. Montague contacted the City of Atlanta's Police Department's Officer of Professional Standards reported that she had been tased by Defendant Gardner.

33.

As part of the formal complaint process, on October 16, 2018 Ms. Montague provided a complete statement regarding her interaction with Defendant Gardner.

34.

As part of the formal complaint process the APD took photographs of her left upper thigh injuries that she contended were inflicted by the Taser.

**Defendant Gardner Relieved Of Duty**

35.

On October 16, 2018 Defendant Gardner was relieved of duty and was suspended with pay.

**Scope of Formal Investigation**

36.

The City of Atlanta Police Department investigated the following potential violations by Defendant Gardner:

(a)     Maltreatment or unnecessary force in violation of APD SOP 2010/4.2.50;

(b)     Reporting required when force used in violation of APD SOP 2010/4.251; and

(c)     Body cameras worn in violation of APD SOP 2010/APD.SOP.3133.

**Defendant Gardner's Formal Statement**

37.

As part of the formal complaint process Defendant Gardner provided a formal statement regarding his interaction with Ms. Montague.

38.

Defendant Montague was required by rules and regulations of the City of Atlanta and its Police Department to provide an administrative statement.

39.

Defendant Montague provided his formal statement on October 17, 2018, ten (10) days after the subject incident.

40.

Defendant Gardner stated that he did not tase Ms. Montague.

41.

Defendant Gardner stated that he did not discharge his Taser during his interaction with Ms. Montague.

42.

Defendant Gardner stated that what appeared to be Taser injuries to Ms. Montague's left upper thigh, were, according to Ms. Montague, injuries she had sustained earlier in the evening  prior to being stopped by him.

43.

Defendant Gardner stated that his body camera was on, but was in the buffer mode and thus, did not record any of his interaction with Ms. Montague.

44.

Defendant Gardner stated that he did not file a use of physical force report or notify a supervisor with respect to Ms. Montague as he did not tase her and used no physical force toward her.

## Defendant Gardner Terminates Interview

45.

During the formal complaint interview, Defendant Gardner abruptly announced that he no longer wished to answer any questions regarding the investigation.

46.

Defendant Gardner stated that he was aware that he was compelled to cooperate and answer all questions, but desired, nevertheless, not to continue participating in the interview.

## Defendant Gardner Resigns From The Police Department

47.

As abruptly as he announced an intention to terminate his participation in the formal complaint interview process, Defendant Gardner abruptly announced that he was resigning from the Atlanta Police Department, effective immediately.

48.

Defendant Gardner submitted a handwritten letter of resignation from the Atlanta Police Department dated October 17, 2018.

**Formal Investigative Findings**

49.

The formal APD investigation found that Defendant Gardner and Ms. Montague provided conflicting statements (in some respects) about what occurred during their interaction on October 7, 2018.

50.

The formal APD investigation found that Defendant Gardner's body camera was working, but that he failed to properly turn it on, contrary to his representation that he turned it on, but that it was in buffer mode and unable to record.

51.

On October 16, 2018 the Office of Professional Standards inspected Defendant Gardner's Taser and uploaded data from it.

52.

The formal APD investigation found that testing of Defendant Gardner's Taser showed that it was arced several times during his traffic stop of Ms. Montague, contrary to his representation that he had not used his Taser.

53.

Arcing the Taser means that a line of electrical current moves between the Taser's two contact points.  When applied to a target the electrical current is considered a pain compliance technique.

54.

The formal APD investigation found that the rectangular marks on Ms. Montague's left upper thigh were consistent with the physical contours of a Taser in drive stun mode.

55.

Drive stun mode means that a Taser is deployed by being held against the target without firing the projectiles, and is intended to cause pain without incapacitating the target.

56.

The formal APD investigation found that Defendant Gardner applied his Taser to Ms. Montague's left upper thigh while it was in drive stun mode, contrary to his contention that he did not use his Taser on Ms. Montague.

57.

The formal APD investigation found that Defendant Gardner applied his Taser to Ms. Montague while she was handcuffed.

58.

The formal APD investigation found that Defendant Gardner failed to complete a use of force incident report that was required to be completed because he applied physical force to Ms. Montague during his interaction with her and because he used his Taser on Ms. Montague.

59.

The formal APD investigation found that Defendant Gardner failed to notify his supervisor that he had used force against Ms. Montague in the form of a Taser in drive stun mode.

60.

The formal APD investigation was considered to be "Exceptionally Closed" due to Defendant Gardner's "separation from the Atlanta Police Department effective October 17, 2018."

## DEFENDANT GARDNER'S VIOLATIONS OF ATLANTA POLICE DEPARTMENT'S RULES AND REGULATIONS

61.

Defendant Gardner violated APD.SOP.3010.4.1.1 that provides as follows: "Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property."

62.

Defendant Gardner violated Atlanta Police Department SOP 2010/4.2.50 that expressly prohibits the use of unnecessary or unreasonable force against any person or property.

63.

The force Defendant Gardner used against Ms. Montague was, under the circumstances, unnecessary or unreasonable.

64.

Ms. Montague committed no act that warranted or authorized the handcuffing or tasing.

65.

Defendant Gardner violated APD.SOP 3042.421 that provides as follows: "An officer's decision to deploy the CEW [Conducted Electronic Weapon] shall involve a physical arrest or a situation where the subject is escalating from passive resistance to active resistance."

66.

Ms. Montague never escalated from passive resistance to active resistance so as to warrant or authorize the use of the Taser against her.

67.

In his formal statement to the Office of Professional Standards, Defendant Gardner stated that he felt he had the situation with Ms. Montague under control at all times.

68.

Defendant Gardner violated APD.SOP 3042.4.4.8 that provides as follows: "The CEW [Conducted Electronic Weapon] shall not be deployed against handcuffed subjects unless exigent circumstances exist that endanger the safety of the officer, suspect, or third party."

69.

Ms. Montague was tased after being handcuffed, in the absence of exigent circumstances that endangered the safety of the officer, suspect, or third party.

70.

Defendant Gardner violated APD.SOP.3042.4.5.1.1 that provides as follows: "Notify Radio dispatch and their immediate supervisor of the CEW [Conducted Electronic Weapon] deployment.  The officer shall do this by announcing over the radio, "Code – 20T."

71.

Defendant Gardner failed to notify dispatch of the deployment of his Taser.

72.

Defendant Gardner failed to notify his immediate supervisor of the deployment of his Taser.

73.

Defendant Gardner violated APD.SOP.3042.4.5.1.7 that provides as follows: "The deploying officer shall complete an ICIS incident report." This SOP further provides that the ICIS incident report "shall be completed before the end of the employees' tour of duty."

74.

Defendant Gardner failed to complete the required ICIS incident report at any time.

75.

Defendant Gardner violated Atlanta Police Department SOP 3133/4.2.1 requires that officers wearing city issued body cameras ensure that they are fully operational.

76.

Defendant Gardner intentionally failed to activate his body camera to capture the traffic stop and all events leading up to his handcuffing and tasing of Ms. Montague.

77.

The Law Enforcement Code of Ethics that Defendant Gardner signed on August 24, 2016 provided in pertinent part that he "will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence,…"

78.

In connection with his encounter with Ms. Montague, Defendant Gardner violated the City of Atlanta Police Department's Code of Ethics.

79.

The Oath of Office that Defendant Gardner signed on August 24, 2016 provided in pertinent part that "I will abide by the rules governing the Atlanta Police Department, adhere to the Law Enforcement Code of Ethics, and uphold the Ethics Code of the City of Atlanta.  In doing so I will be mindful of the trust that has been placed in me to improve the quality of life and make every effort to live up to that trust."

## THE INJURIES, HARMS, AND LOSSES
## DEFENDANT GARDNER CAUSED

80.

As a direct and proximate result of being needlessly handcuffed and tased, Ms. Montague experienced an unwarranted taking of her liberty, physical pain, and emotional harm.

## COUNT I
## ILLEGAL DETENTION UNDER 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

81.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-80 above, as if fully set forth herein.

82.

This count is alleged against Defendant Gardner in his individual and official capacities.

83.

Acting under color of state law, Defendant Gardner violated Plaintiff's state and federal constitutional rights by handcuffing her and unjustifiably detaining her without probable cause.

84.

When Defendant Gardner got behind Ms. Montague's vehicle and actuated his lights and sirens, Ms. Montague immediately exited the highway and brought her car to a stop.  She continued to comply with all of Defendant Gardner's instructions and posed no threat to him or the public when he detained her.

85.

By detaining Plaintiff under these circumstances, Defendant Gardner's actions exemplify his reckless and callous disregard for the protections afforded her

under the Fourth Amendment of the Constitution of the United States and under the Constitution of the State of Georgia.

86.

Because of this unlawful seizure, Ms. Montague is entitled to the recovery of compensatory, punitive, and/or nominal damages against Defendant Gardner pursuant to 42 U.S.C. § 1983.

87.

Acting under color of state law, Defendant Gardner violated Ms. Montague's state and federal constitutional rights by depriving her of liberty without due process of law.

88.

Because of this unlawful seizure, Ms. Montague is entitled to the recovery of compensatory, punitive, and/or nominal damages against Defendant Gardner pursuant to 42 U.S.C. § 1983.

## COUNT II
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

89.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-80 above, as if fully set forth herein.

90.

This count is alleged against Defendant Gardner in his individual and official capacities.

91.

Acting under color of state law, Defendant Gardner violated Ms. Montague's state and federal constitutional rights by tasing her without any just or probable cause.

92.

Acting under color of state law, Defendant Gardner violated Ms. Montague's state and federal constitutional rights by tasing her while she was handcuffed, without any just of probable cause.

93.

Defendant Gardner violated Ms. Montague's Fourth Amendment rights by deploying his Taser on Ms. Montague, without cause or provocation, while she was handcuffed.

94.

Ms. Montague fully complied with all of Defendant Gardner's commands. She was handcuffed, not attempting to flee nor resisting in any manner, and did not pose a threat of harm to herself, Defendant Gardner, or the public, when Defendant Gardner unnecessarily and unjustifiably tased her.

95.

Acting under color of state law, Defendant Gardner violated Ms. Montague's state and federal constitutional rights by employing excessive force against her without any just or probable cause.

96.

The force Defendant Gardner used, while Ms. Montague was not resisting and restrained with her hands secured behind her back, was excessive and beyond any force reasonably necessary to protect himself or the public, and to maintain control of the situation.

97.

Defendant Gardner's actions exemplify his malicious, reckless, and callous disregard for Ms. Montague's safety and for the protections afforded her under the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

## COUNT III
## VIOLATION OF O.C.G.A. § 51-7-20

98.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-80 above, as if fully set forth herein.

99.

This count is alleged against Defendant Gardner in his individual and official capacities.

100.

By detaining Ms. Montague, who was complying with all of Defendant Gardner's commands, without probable cause, Defendant Gardner subjected Plaintiff to an unlawful detention in violation of OCGA §51-7-20.

101.

Defendant Gardner acted with malice or willfulness toward Ms. Montague.

102.

In making the decision to detain Plaintiff, Officer Gardner possessed the deliberate intention to do wrong.

103.

Defendant Gardner's actions were malicious, reckless, and callously indifferent to Ms. Montague's clearly established rights.

104.

Defendant Gardner is not entitled to official immunity under Georgia law.

## **COUNT IV**
## **VIOLATION OF O.C.G.A. §§ 51-1-13, 51-1-14, 16-5-23, AND 16-5-23.1**

105.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-80 above, as if fully set forth herein.

106.

This count is alleged against Defendant Gardner in his individual and official capacities.

107.

By employing his Taser on Ms. Montague, Defendant Gardner violated her rights in the following respects - OCGA § 51-1-13 (cause of action for physical injury); O.C.G.A. § 51-1-14 (violent injury or attempt to commit injury); O.C.G.A. § 16-5-23 (simple battery); and O.C.G.A. § 16-5-23.1 (battery).

108.

Defendant Gardner acted with actual malice toward Ms. Montague. In making the decision to deploy his Taser on Ms. Montague, without provocation or cause, and while she was still in handcuffs, Defendant Gardner possessed the deliberate intention to do wrong.

109.

Defendant Gardner's actions were malicious, reckless, and callously indifferent to Ms. Montague's clearly established rights.

## **COUNT V**
## **PUNITIVE DAMAGES**

110.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-80 above, as if fully set forth herein.

111.

Defendant Gardner's actions as described in this Complaint show willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences as contemplated under O.C.G.A. § 51-12-5.1.

## <u>COUNT VI</u>
## <u>ATTORNEY'S FEES UNDER O.C.G.A. § 13-6-11</u>

112.

Plaintiff incorporates by reference the allegations contained in paragraphs 1-80 above, as if fully set forth herein.

113.

This count is alleged against Defendant Gardner in his individual and official capacities.

114.

Plaintiff is entitled to recover expenses of litigation and attorney's fees under O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense.

115.

O.C.G.A. § 13-6-11 applies to claims arising under Georgia law.

116.

Ms. Montague is entitled to recover her actual expenses of litigation, including attorney's fees, from the Defendant.  Ms. Montague is entitled to an award of costs pursuant to 42 U.S.C. § 1988, including an award of attorney's fees.

## **PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

**WHEREFORE**, Plaintiff prays that she has a trial by jury on all issues and judgment against the Defendant as follows:

a)  This Court grants Plaintiff a trial by jury on all issues so triable;

b)  Judgment be awarded against the Defendant in favor of the Plaintiff for all damages in an amount to be determined by the enlightened conscience of an impartial jury;

c)  Judgment be entered against the Defendant in favor of the Plaintiff for Plaintiff's attorney's fees, costs, and expenses of litigation pursuant to O.C.G.A. § 13-6-11, 42 U.S.C. § 1988, and any other applicable law;

d)  Judgment be entered against the Defendant in favor of the Plaintiff for punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined by the enlightened conscience of an impartial jury; and

e)  Plaintiff be awarded such other and further relief as this Court deems just and proper.

This 13th day of December, 2019.

/S/ Mawuli Mel Davis
MAWULI MEL DAVIS
Georgia Bar No. 212029
mdavis@davisbozemanlaw.com
HAROLD W. SPENCE
Georgia Bar No.  671150
hspence@davisbozemanlaw.com
*Attorneys for Plaintiff*

**Davis Bozeman Law Firm, P.C.**
4153-C Flat Shoals Parkway
Suite 332
Decatur, Georgia 30034
Telephone: (404) 244-2004
Fax: (404) 244-2020